*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EVAN DELANTA CLOWES,

Defendant-Appellant.

UNPUBLISHED
October 29, 2020

No. 347010
Monroe Circuit Court
LC No. 18-244652-FH

Before: GLEICHER, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of accosting, enticing or soliciting a child for immoral purposes, MCL 750.145a, and two counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e (multiple variables). Defendant was sentenced to 365 days for each conviction. We affirm.

## I. BACKGROUND

In the summer of 2017, 16-year-old MB and 14-year-old VK, the victim, were best friends. They hung out with 20-year-old Austin Harrington, 17-year-old NC, and 23-year-old defendant. In late June, MB posted a picture or two of herself and the victim along with the victim's username on Snapchat. The 23-year-old defendant added the victim on Snapchat and sent her messages reading:

M[B] suggested that we have a 3some.

Tbh [To be honest] you[']r[e] too gorgeous and mature for your age.

And I'd destroy ya.

The victim did not respond to these messages.

Shortly thereafter, defendant, Harrington, and NC, picked up MB from her home. Harrington was driving the group around in his four-door Ford Focus. According to the victim,

-1-

MB called her and asked whether she wanted to hang out with Harrington and a few other people. The victim agreed, only later learning that defendant was one of those people. En route to pick up the victim at her Monroe County home, Harrington had also picked up Steven Seregny.

The group drove around Canton and Ypsilanti before Harrington drove MB home. Harrington then drove to a liquor store, where defendant purchased a bottle of liquor that, according to the victim, NC consumed in its entirety. Harrington also drove the remaining group to an area behind a pharmacy, where they all smoked marijuana. Afterward, Harrington dropped Seregny off at a bowling alley. At that time, NC was seated in the front passenger seat while defendant and the victim were in the backseat alone.

As Harrington was driving the victim home, defendant asked the victim to have sex with him several times, but the victim refused. Defendant started to verbally demand sex and told the victim that sex "was going to happen anyways." Defendant tried to force the victim to kiss him, but she pulled away. Defendant gripped the victim by her throat and said, "don't make me hurt you." Defendant momentarily restricted the victim's airflow and caused her pain. Defendant put his hand on her right thigh. The victim moved defendant's hand away. Defendant touched the victim's right thigh again and then touched her vaginal area.

Defendant unbuttoned and forcefully put his hand in the victim's pants. And although the victim clenched her legs together, defendant digitally penetrated the folds outside of her vagina. While Harrington was driving down the victim's street, defendant pulled his pants down, exposed his genitals, and forcefully placed the victim's right hand on his penis. The next day, the victim told her parents about defendant's assault and they reported it to local law enforcement.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied his Sixth Amendment right to the effective assistance of counsel because defense counsel failed to call Harrington, NC, and Seregny as witnesses. Defendant asserts that the testimony of these individuals was beneficial to him because they would have testified that they were unaware of anything "untoward" occurring in the car.

Defendant filed a motion for remand, seeking a *Ginther*[1] hearing, which we denied without prejudice. *People v Clowes*, unpublished order of the Court of Appeals, entered June 26, 2019 (Docket No. 347010). After oral argument, however, we remanded this case to the trial court to conduct an evidentiary hearing on defendant's claim and retained jurisdiction. *People v Clowes*, unpublished order of the Court of Appeals, entered February 18, 2020 (Docket No. 347010).

On remand, the trial court authorized a private investigator to assist appellate defense counsel with locating these witnesses and the parties filed "pre-trial" statements. The prosecution's statement indicated that Thomas Ruddy, defendant's trial counsel, would testify about his "extensive efforts" to locate these witnesses, his conversation with NC, during which NC conveyed a "complete lack of knowledge regarding the incident," and his conversations with defendant, during which defendant insisted that "Seregny would not have any relevant

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

information." Moreover, the prosecution's statement indicated that the trial prosecutor would confirm portions of Ruddy's statements, adding that she offered to stipulate to the witnesses' potential testimony given Ruddy's unsuccessful efforts to locate them. Appellate defense counsel's pre-hearing statement reported that he had spoken with Serengy, and, after two conversations, "it did not appear that [Serengy] had any admissible information." Appellate counsel was still attempting to establish contact with NC and had left voice messages for Harrington. Appellate defense counsel subpoenaed Harrington, NC, and Ruddy to testify at the hearing.

But, shortly before the scheduled evidentiary hearing date, defendant absconded. At the hearing, appellate defense counsel informed the trial court that he had not subpoenaed Serengy to testify because Serengy was not in the car during the assault. As for Harrington, appellate defense counsel had spoken to him once and was not able to get in touch with him again. And, as for NC, appellate defense counsel was never able to talk to him either. Although Ruddy was present for the evidentiary hearing, neither Harrington nor NC were able to be served despite assistance from the prosecution and law enforcement. After the trial court opted to continue the hearing in defendant's absence, appellate defense counsel informed the court that he had no witnesses to call.[2]

Given defendant's failure to produce any evidence at the hearing, the trial court ruled that defendant had failed to demonstrate that his trial counsel performed deficiently, or, even if he had, that counsel's deficient performance prejudiced defendant. First, as to Serengy, the parties agreed that counsel did not perform deficiently. Second, as to Harrington, the trial court specifically recalled meeting with the prosecutor and Ruddy before trial.[3] They "talked about . . . Harrington and how he was in the service and they both indicated that Mr. Harrington had nothing to say about what went on." Even setting that aside, the failure to call Harrington was neither deficient performance, given the difficulty of serving Harrington, nor prejudicial. Lastly, as to NC, no one had "been able to get ahold of [NC]," even "at the time of trial."[4] And because no one knew what NC's testimony would be, defendant failed in his burden of proving counsel's performance was deficient and that that he was prejudiced. The trial court entered an order consistent with its on-the-record findings.

We now address defendant's argument that his trial counsel was ineffective for failing to investigate or call these witnesses to testify at trial.

A. APPLICABLE LEGAL STANDARDS

---

[2] "[T]he trial lawyer is a necessary witness on the issue of inadequacy of counsel." *People v Mitchell*, 454 Mich 145, 168; 560 NW2d 600 (1997).

[3] During the initial hearing held on remand, the trial court mentioned that it informed the parties to prepare a stipulation and order informing the jury of this; however, the parties failed to do so.

[4] We recognize that the prosecution's pretrial statement reflects that defendant's trial counsel contacted NC before trial.

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "[A] trial court's findings of fact are reviewed for clear error." *Id.* But we review questions of constitutional law de novo. *Id.*

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defense." US Const, Am VI. "The right to counsel guaranteed by the Michigan Constitution is generally the same as that guaranteed by the Sixth Amendment; absent a compelling reason to afford greater protection under the Michigan Constitution, the right to counsel provisions will be construed to afford the same protections." *People v Hoang*, 328 Mich App 45, 55; 935 NW2d 396 (2019) (quotation marks omitted). In order to prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). The right to effective assistance of counsel is substantive and focuses on "the actual assistance received." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996).

In satisfying the first prong, "a defendant must show that [] counsel's performance fell below an objective standard of reasonableness[.]" *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Defendant must "overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015) (quotation marks and citation omitted). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy; counsel's strategy must be sound, and the decisions as to it objectively reasonable." *Id.* at 388-389 (quotation marks and citation omitted).

The failure to undertake a reasonable investigation may constitute ineffective assistance of counsel. *Trakhtenberg*, 493 Mich at 51-55. Defense counsel has a duty to conduct reasonable investigations or to make a reasonable decision that renders particular investigations unnecessary. *Id.* at 52. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks, brackets, and citation omitted). "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *Id.* "This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008) (quotation marks omitted). A "defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel." *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## B. ANALYSIS

We conclude that the trial court's factual findings were not clearly erroneous and its legal conclusion was correct. Like the trial court, we conclude that defendant's claims fail because he did not carry his burden of establishing a testimonial record to support his allegations. *Hoag*, 460 Mich at 6; *Mitchell*, 454 Mich at 168. And, even if we were able to overlook this deficiency, defendant nevertheless failed to establish that trial court's performance was deficient.

Beginning with Seregny, the record indicates that defense counsel knew that Seregny was not present in Harrington's vehicle at the time of the assault. As appellate defense counsel's later conversations with Seregny bear out, Seregny lacked the personal knowledge required to testify about events that occurred outside of his presence. MRE 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Accordingly, defendant has not established that his trial counsel was ineffective for failing to investigate or call Seregny as a witness.

Unlike Seregny, Harrington and NC were in Harrington's vehicle at the time the victim stated that defendant assaulted her. According to defendant, Harrington and NC would have testified that they were unaware of anything "untoward" occurring in the car. This, however, does not suggest that nothing occurred.

According to defendant's trial testimony, Harrington was using the victim's cellular telephone's GPS function to direct Harrington to the victim's house, Harrington did not have the music volume turned up loudly inside the car, and NC was listening to his headphones in the front passenger seat. But, in addition to acknowledging that the remaining passengers were distracted, the victim testified that she did not believe that Harrington or NC noticed defendant's actions or heard defendant because: (1) NC was "pretty much" passed out drunk; (2) Harrington was focused on utilizing the GPS navigation system; (3) the music inside the car was playing loudly; and (4) defendant spoke in a low tone. Defense trial counsel may have reasonably decided against calling Harrington and NC as witnesses, assuming that they did not invoke any Fifth Amendment rights they may have had, because their testimony may have weighed against defendant's credibility. For instance, defendant denied purchasing and consuming marijuana that day, and defendant admitted that he knew that the victim was a minor. Calling Harrington or NC to testify might have opened the door for the prosecutor to present evidence that defendant offered the victim marijuana. Defense counsel may have also reasonably decided against calling Harrington or NC, as witnesses because their testimony may have bolstered the victim's credibility. Again, defendant denied purchasing alcohol, but the victim testified that NC was unaware of defendant's assault because he was passed out drunk, as a result of consuming the entire bottle of alcohol that defendant, who was the only legal adult in the car at the time, had purchased.

Additionally, appellate defense counsel's post-trial efforts to contact Harrington and NC demonstrate that, even with the aid of an investigator, contacting, let alone serving, both witnesses was a daunting task. The trial court record further indicated that NC was avoiding contact with the police. Therefore, defendant's trial counsel may have been concerned that NC's credibility before the jury would have been negatively impacted by this behavior. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (stating that we should "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did" (quotation marks omitted)).

For these reasons, defendant has not overcome the presumption that defense counsel's decision not to present Harrington or NC as witnesses was a matter of trial strategy. *People v*

*Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).  Having concluded that defendant failed to establish that trial counsel's performance was deficient, we need not address the question of prejudice.  *Strickland v Washington*, 466 US 466, 674; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ Michael F. Gadola
/s/ Anica Letica